FILED

08/21/2018

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 1, 2018

## IN RE TAYLOR C.

**Appeal from the Circuit Court for Knox County**
**No. 2-485-15  William T Ailor, Judge**

———————————————————

**No. E2017-01824-COA-R3-PT**

———————————————————

This is a termination of parental rights case.  Mother/Appellant appeals the termination of her parental rights to the minor child on the grounds of abandonment by willful failure to support and willful failure to visit.   Tenn. Code Ann. §§ 36-1-113(g)(1), 36-1-102(1)(A)(i).  Mother also appeals the trial court's determination that termination of her parental rights is in the child's best interest.  Discerning no error, we affirm and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the court, in which ANDY D. BENNETT and THOMAS R. FRIERSON, II, JJ., joined.

Gerald L. Gulley, Jr., Knoxville, Tennessee, for the appellant, Felecia C.

Jennifer S. Bjornstad, Knoxville, Tennessee, for the appellee, Monica H.

## OPINION

### I. Background

The minor child, Taylor C., was born to Felecia C. ("Mother," or "Appellant") in January 2010.[1]  Monica H. ("Appellee") is the child's great aunt by marriage.[2]  On or about October 30, 2014, the Juvenile Court of Knox County declared Taylor to be dependent and neglected.  Although a copy of the October 30, 2014 order is not included in the appellate record, it is undisputed that the child has lived with Monica H. since

---

[1] In cases involving minor children, it is the policy of this Court to redact the parties' names so as to protect their identities.
[2] Monica H. is no longer married to the child's great uncle.

October 30, 2014.[3]  Furthermore, as set out in the order terminating Mother's parental rights, under the October 30, 2014 order, Mother "was awarded supervised visitation with the supervision to be by an agency at the mother's expense."

On September 14, 2015, Monica H. filed a petition to terminate Mother's parental rights to Taylor and for adoption in the Circuit Court for Knox County ("trial court").  As grounds for termination of Mother's parental rights, the petition alleged abandonment by both willful failure to support and willful failure to visit.[4]  The trial court subsequently appointed an attorney for Mother and a guardian ad litem for the child.  On January 4, 2016, Mother filed an answer to the petition.  Therein, Mother admitted that she had not visited the child during the relevant time period but asserted that Monica H. had prevented her attempts to visit.

The trial court heard the petition to terminate Mother's parental rights on May 16, 2016.  By order of June 30, 2016, the trial court terminated Mother's parental rights on the grounds of abandonment by both willful failure to visit and willful failure to support. The trial court also found that termination of Mother's parental rights is in the child's best interest.  Mother appeals.

## II. Issues

There are two dispositive issues, which we state as follows:

1.  Whether there is clear and convincing evidence to support at least one of the grounds for termination of Appellant's parental rights.

2.  If so, whether there is clear and convincing evidence to support the trial court's determination that termination of Appellant's parental rights is in the child's best interest.

## III. Standard of Review

Under both the United States and Tennessee Constitutions, a parent has a fundamental right to the care, custody, and control of his or her child.  ***Stanley v. Illinois***, 405 U.S. 645, 651 (Tenn. 1972); ***Nash-Putnam v. McCloud***, 921 S.W.2d 170, 174 (Tenn. 1996).  Thus, the state may interfere with parental rights only when a compelling interest exists.  ***Nash-Putnam***, 921 S.W.2d at 174-75 (citing ***Santosky v. Kramer***, 455 U.S. 745 (1982)).  Our termination statutes identify "those situations in which the state's interest in

---

[3] The record is not clear concerning where, or with whom, Taylor lived prior to October 30, 2014. It appears that the child was kept by various family members, including her paternal aunt, maternal great-grandmother, and her paternal uncle.

[4] Monica H. also brought her petition against Taylor's biological father.  He did not participate in the case, and his parental rights were terminated by default on February 17, 2016.  He is not a party to this appeal.

the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought." *In re W.B.*, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005) (citing Tenn. Code Ann. § 36-1-113(g)). A person seeking to terminate parental rights must prove both the existence of one of the statutory grounds for termination and that termination is in the child's best interest. Tenn. Code Ann. §§ 36-1-113(c); *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

Because of the fundamental nature of the parent's rights and the grave consequences of the termination of those rights, courts must require a higher standard of proof in deciding termination cases. *Santosky*, 455 U.S. at 769. Accordingly, both the grounds for termination and that termination of parental rights is in the child's best interest must be established by clear and convincing evidence. Tenn. Code Ann. § 36-3-113(c)(1); *In re Valentine*, 79 S.W.3d at 546. Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable . . . and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004). Such evidence "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." *Id*. at 653.

In view of the heightened standard of proof in termination of parental rights cases, a reviewing court must modify the customary standard of review in Tennessee Rule of Appellate Procedure 13(d). As to the trial court's findings of fact, our review is de novo with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). We must then determine whether the facts, as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements necessary to terminate parental rights. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002).

### IV. Grounds for Termination of Parental Rights

As noted earlier, the trial court relied on the two statutory grounds in terminating Appellant's parental rights: (1) abandonment by willful failure to visit; and (2) abandonment by willful failure to support. Tenn. Code Ann. §§ 36-1-113(g)(1), 36-1-102(1)(A)(i). Although only one ground must be proven by clear and convincing evidence in order to terminate a parent's rights, the Tennessee Supreme Court has instructed this Court to review every ground relied upon by the trial court to terminate parental rights in order to prevent "unnecessary remands of cases." *In re Angela E.*, 303 S.W.3d 240, 251 n.14 (Tenn. 2010). Accordingly, we will review both of the foregoing grounds.

We begin with the ground of abandonment generally. In this case, Monica H.

alleged abandonment under Tennessee Code Annotated Section 36-1-113(g)(1), which provides that termination of a parent's rights may be initiated based on "[a]bandonment by the parent or guardian, as defined in § 36-1-102 . . . ." Tenn. Code Ann. § 36-1-113(g)(1). Tennessee Code Annotated section 36-1-102 outlines several definitions of "abandonment." As is relevant to this case, the statute provides:

> (1)(A) For purposes of terminating the parental or guardian rights of a parent or parents or a guardian or guardians of a child to that child in order to make that child available for adoption, "abandonment" means that:
>
> (i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding, pleading, petition, or any amended petition to terminate the parental rights of the parent or parents or the guardian or guardians of the child who is the subject of the petition for termination of parental rights or adoption, that the parent or parents or the guardian or guardians either have failed to visit or have failed to support or have failed to make reasonable payments toward the support of the child[.]

Tenn. Code Ann. § 36-1-102(1)(A)(i). Here, Monica H. filed the petition to terminate Mother's parental rights on September 14, 2015; accordingly, the relevant statutory time period applicable to the ground of abandonment is May 13, 2015 to September 13, 2015. *In re Jacob C.H.*, No. E2013-00587-COA-R3-PT, 2014 WL 689085, at *6 (Tenn. Ct. App. Feb. 20, 2014).

Concerning the statutory requirement that a parent's failure to visit or support must be willful in order to support the ground of abandonment, this Court discussed the willfulness criterion as follows:

> The concept of "willfulness" is at the core of the statutory definition of abandonment. A parent cannot be found to have abandoned a child . . . unless the parent has . . . "willfully" . . . failed to support the child for a period of four consecutive months. . . . In the statutes governing the termination of parental rights, "willfulness" does not require the same standard of culpability as is required by the penal code. Nor does it require malevolence or ill will. Willful conduct consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent. Conduct is "willful" if it is the product of free will rather than coercion. Thus, a person acts "willfully" if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing ....
>
> The willfulness of particular conduct depends upon the actor's intent. Intent is seldom capable of direct proof, and triers-of-fact lack the ability to peer into a person's mind to assess intentions or motivations.

- 4 -

Accordingly, triers-of-fact must infer intent from the circumstantial evidence, including a person's actions or conduct.

*In re Audrey S.*, 182 S.W.3d 838, 863-64 (Tenn. Ct. App. 2005) (internal citations and footnotes omitted). "Whether a parent failed to visit or support a child is a question of fact. Whether a parent's failure to visit or support constitutes willful abandonment, however, is a question of law." *In re Adoption of Angela E.*, 402 S.W.3d at 640 (citing *In re Adoption of A.M.H.*, 215 S.W.3d at 810). As previously discussed, this Court reviews questions of law de novo with no presumption of correctness. *Id*.

Concerning the ground of abandonment by willful failure to support, this Court has held that failure to pay support is "willful" if the parent "is aware of his or her duty to support, has the capacity to provide the support, makes no attempt to provide support, and has no justifiable excuse for not providing the support." *In re J.J.C.*, 148 S.W.3d 919, 926 (Tenn. Ct. App. 2004) (quoting *In re Adoption of Muir*, No. M2002-02963-COA-R3-CV, 2003 WL 22794524, at *5 (Tenn. Ct. App. Nov. 25, 2003)). A parent willfully fails to support her child when, for the relevant four month period, the parent fails to provide monetary support or fails to provide more than "token payments" toward the support of the child. Tenn. Code Ann. § 36-1-102(1)(D) (defining "willfully failed to support" and "willfully failed to make reasonable payments toward such child's support"). "Token support" is support that, considering the individual circumstances of the case, is "insignificant given the parent's means." *Id*. at (1)(B). Although it is undisputed that Appellant paid no support for Taylor during the relevant time period, in order to prove this ground, Monica H. also has the burden to show that Mother had the capacity to provide support. *In re. J.J.C.*, 148 S.W.3d at 926. As this Court recently explained:

> It is axiomatic that "in order to establish the ground of abandonment by willful failure to support by clear and convincing evidence, the party seeking termination must generally 'submit ... evidence regarding [the parent's] employment, income, [or] other non-monetary assets,'" as well as the parent's 'expenses during the four-month period.'" *In re Michael B*., No. M2015-02497-COA-R3-PT, 2016 WL 7486361, at *11 (Tenn. Ct. App. Oct. 6, 2016) (quoting *In re Destiny H*., No. W2015-00649-COA-R3-PT, 2016 WL 722143, at *9 (Tenn. Ct. App. Feb. 24, 2016)). Such evidence need not be an accounting of every dollar earned and spent, and it need not even be tied to dollars and cents, but it must be clear and convincing evidence that the parent had the capacity to pay support, did not do so, and had no justification for not doing so. In the case of *In re Adoption of Angela E*., 402 S.W.3d [636,] at 641 [(Tenn. 2013)], in the context of examining whether the father's payments were "token support," our Supreme Court stated that the evidence of the father's income and expenses was "limited at best" and failed to prove that his payments were

"token support." *See also* **In re Michael B.**, 2016 WL 7486361, at \*11 (discussing **In re Adoption of Angela E.** and other cases regarding proof of employment, income, other non-monetary assets, and expenses necessary to establish a parent's capacity to pay support).

**In re Preston L**., No. M2016-02338-COA-R3-PT, 2017 WL 4315356, at \*5 (Tenn. Ct. App. September 27, 2017).

In its order terminating Mother's parental rights, the trial court found, in relevant part,

[t]hat the mother has never paid any child support for the support of this child . . . . The mother was employed throughout 2015. The mother was paid approximately $120 per week, however, she made no effort to pay child support for the child. The mother had been unemployed for approximately two months prior to the hearing due to the death of the elderly man she was sitting for. Despite being unemployed for the last two months, the mother made no effort to find gainful employment.

\*\*\*

That the mother has abandoned the child by willfully failing to provide support for the child during the four months preceding the filing of the Petition. The mother has been employed since prior to 2015, and despite having income and the ability to support, the mother has never made any payment for the support of the child.

Turning to the record, Mother testified that she was employed during some part of the relevant four-month time period, to-wit:

Q. Did you work in 2015?
A. Yes.
Q. Where did you work?
A. I was sitting with an elderly man.

\*\*\*

Q. How much were you being paid?
A. I was working three days a week. Probably maybe a hundred twenty a week.

There is no evidence to suggest that Mother has any infirmity that would preclude her from gainful employment. The issue with Mother's sporadic work history appears to be

- 6 -

the fact that she has struggled with substance abuse issues, which have resulted in numerous criminal charges. Nonetheless, during those times when she was able to maintain employment, including her job as sitter, she did not attempt to provide any monetary support for Taylor. Specifically, Mother testified:

> Q. Okay. So during that period [i.e., the relevant four-month time period], . . . [w]ere you paying child support to any of the children?
> A. No. I've not been ordered to pay child support.

In the first instance, parents are presumed to know that they have a legal obligation to support their children. See Tenn. Code Ann. § 36-1-102(1)(H). Furthermore,

> biological parents must, as a general matter, support their children until they reach the age of majority.... The parent's obligation to support, as well as the child's right to support, exist regardless of whether a court order exists, and regardless of whether the parents were ever married.

*State ex rel. Hayes v. Carter*, No. W2005-02136-COA-R3-JV, 2006 WL 2002577, at *2 (Tenn. Ct. App. July 6, 2006) (citing Tenn. Code Ann. § 34-1-102(a); *Smith v. Gore*, 728 S.W.2d 738, 750 (Tenn. 1987)); *see also State Dep't of Human Servs. v. Manier*, No. 01A01-9703-JV-00116, 1997 WL 675209, at *5 (Tenn. Ct. App. Oct. 31, 1997) ("We dare say that the support of one's children should not be conditioned upon whether one has been placed under a court order to do so."). Accordingly, the fact that Mother was not under court order to provide support does not, *ipso facto*, relieve her of that obligation. It is undisputed that Mother made no financial contribution to the support of the child. Furthermore, Monica H. testified that Mother never provided any gifts or necessaries for the child during the relevant time period. From the undisputed facts, we conclude that there is clear and convincing evidence to support the trial court's termination of Mother's parental rights on the ground of abandonment by willful failure to support.

Concerning the ground of willful failure to visit, the trial court specifically found "[t]hat mother has not had any contact with the child since before October of 2014, and first contacted Parent Place to schedule supervised visitation on September 14, 2015." The record supports this finding. Mother does not dispute that she has not seen Taylor since October of 2014. However, during the hearing, she indicated that her attempts to arrange supervised visitation through Parent Place had been thwarted. The Tennessee Supreme Court has held that a parent who attempts to visit and maintains a relationship with the child, but is "thwarted by the acts of others and circumstances beyond [her] control," cannot be found to have willfully abandoned the child. *In re Adoption of A.M.H.*, 215 S.W.3d 793, 810 (Tenn. 2007); *In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006). The flaw in Mother's argument is that, by her own testimony, despite the

fact that she was granted the opportunity for supervised visits (by the October 30, 2014 juvenile court order, *supa*), she did not seek visitation until September of 2015, which was after Mother was served with the petition to terminate her parental rights. "Abandonment [by failure to visit] may not be repented of by resuming visitation. . . subsequent to the filing of any petition seeking to terminate parental ... rights or seeking the adoption of a child[.]" Tenn. Code Ann. § 36-1-102(1)(F); *see also **In re Adoption of Angela E.***, 402 S.W.3d 636, 640 (Tenn. 2013) (quoting Tenn. Code Ann. § 36-1-102(1)(F)) ("A parent may not attempt to rectify abandonment by resuming payments of support subsequent to the filing of 'any petition' seeking to terminate parental rights or seeking to adopt a child."). There is no evidence that Mother was thwarted or otherwise precluded from seeking visitation in the four months preceding the filing of the petition to terminate her parental rights. In view of the undisputed fact that Mother did not attempt to visit Taylor from October 2014 (when the child was placed with Monica H.) until after she was served with the petition to terminate parental rights, we conclude that the evidence clearly and convincingly supports the trial court's termination of Mother's parental rights on the ground of abandonment by willful failure to visit.

## V. Best Interests

When at least one ground for termination of parental rights has been established, the petitioner must then prove, by clear and convincing evidence, that termination of the parent's rights is in the child's best interest. ***White v. Moody***, 171 S.W.3d 187, 192 (Tenn. Ct. App. 2004). When a parent has been found to be unfit (upon establishment of ground(s) for termination of parental rights), the interests of parent and child diverge. ***In re Audrey S.***, 182 S.W.3d at 877. The focus shifts to the child's best interest. ***Id.*** at 877. Because not all parental conduct is irredeemable, Tennessee's termination of parental rights statutes recognize the possibility that terminating an unfit parent's parental rights is not always in the child's best interest. ***Id***. However, when the interests of the parent and the child conflict, courts are to resolve the conflict in favor of the rights and best interest of the child. Tenn. Code Ann. § 36-1-101(d). Further, "[t]he child's best interest must be viewed from the child's, rather than the parent's, perspective." ***White***, 171 S.W.3d at 194.

The Tennessee Legislature has codified certain factors that courts should consider in ascertaining the best interest of the child in a termination of parental rights case. As is relevant to the instant case, these factors include, but are not limited to, the following:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

\*\*\*

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child.
(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

***

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines . . . ;

Tenn. Code Ann. § 36-1-113(i). This Court has noted that "this list [of factors] is not exhaustive, and the statute does not require a trial court to find the existence of each enumerated factor before it may conclude that terminating a parent's rights is in the best interest of a child." *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). Depending on the circumstances of an individual case, the consideration of a single factor or other facts outside the enumerated, statutory factors may dictate the outcome of the best interest analysis. *In re Audrey S.*, 182 S.W.3d at 877. As explained by this Court:

Ascertaining a child's best interests does not call for a rote examination of each of Tenn. Code Ann. §§ 36-1-113(i)'s nine factors and then a determination of whether the sum of the factors tips in favor of or against the parent. The relevancy and weight to be given each factor depends on the unique facts of each case. Thus, depending upon the circumstances of a particular child and a particular parent, the consideration of one factor may very well dictate the outcome of the analysis.

*White*, 171 S.W.3d at 194.

In its order terminating Appellant's parental rights, the trial court made the following relevant findings concerning the child's best interest:

That it is in the best interest of the child for the mother's parental rights to be terminated. The mother has made efforts to change her conduct and the conditions of her home, however . . . the mother's live-in boyfriend spent four years in prison, creating an issue regarding the safety of the home. The mother has not made a lasting adjustment though she has made some progress with her substance abuse issues. The mother has not had any contact or visits with the child since prior to October of 2014. A meaningful relationship has been established between the petitioner and the child, however, a meaningful relationship does not exist between the mother and the child. A change in the child's caretaker would be

- 9 -

traumatizing to this child based upon the first four years of the child's life when compared to her life since residing with the petitioner.

The appellate record supports the trial court's findings. By her own admission, Mother has a history of drug and alcohol abuse. Although Mother testified that, in September of 2015, she completed intensive outpatient treatment for her addiction, she admitted that she "received a DUI in Sevier County and a shoplifting charge in Anderson County after [she] completed that intensive outpatient treatment." These charges do not support a finding that Mother has conquered her addiction so as to make her home a safe and stable environment for Taylor. We have previously discussed the fact that Mother has failed to visit and support the child. At the time of trial, Mother was not employed, although (as noted above) there is no evidence that she is unable to hold a job. Meanwhile, the record shows that Taylor has adjusted to her home with Monica H. She considers Monica H. to be her mother. Monica H. testified that, when Taylor first came to live with her, the child had some adjustment issues, including a fear that Monica H. would leave her and a lack of empathy and proper emotional response. However, under Monica H.'s care, the child has received therapy for these issues, and, according to Monica H., Taylor has largely overcome these initial issues. In view of Mother's current living situation, the fact that her sobriety is unproven, and her lack of gainful employment, it does not appear that Mother will be able to care for this child at any early date. This fact, coupled with the undisputed testimony that Taylor is thriving in her current home with Monica H. clearly and convincingly supports the trial court's finding that removal from Monica H.'s home would likely cause the child emotional and psychological damage. From the totality of the circumstances, we conclude that there is clear and convincing evidence to support the trial court's finding that termination of Mother's parental rights is in the child's best interest.

## VI. Conclusion

The trial court's order is affirmed, and the case is remanded for such further proceedings as may be necessary and are consistent with this opinion.

_____
ARNOLD B. GOLDIN, JUDGE